### MEDICINE SHOPPE INTERNATIONAL, INC., Appellant,

v.

### DIRECTOR OF REVENUE, Respondent.

### No. SC 83888.

Supreme Court of Missouri, En Banc.

April 9, 2002.

As Modified on Denial of Rehearing May 28, 2002.

---

Richard E. Lenza, William B. Prugh, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Charles W. Hatfield, Asst. Atty. Gen., Jefferson City, for Respondent.

Edward F. Downey, Wade L. Nash, Jefferson City, Juan D. Keller, John P. Barrie, B. Derek Rose, St. Louis, Amicus Curiae.

MICHAEL A. WOLFF, Judge.

Medicine Shoppe International, Inc., headquartered in St. Louis, franchises retail pharmacies throughout the United States and offers its franchisees a variety of services including marketing, advertising, operational accounting and analysis of plans. Medicine Shoppe also offers loans to its franchisees to help them start or expand their businesses.

■ The issue in this appeal is whether the income from interest and origination fees on such loans to out-of-state franchisees is income partly derived from activities in this state and, thus, is Missouri source income subject to tax in Missouri.

The director of revenue determined that the income from loans to franchisees was Missouri source income, under section 143.451, and should be included with other Medicine Shoppe income subject to the statute's single-factor apportionment method that results in taxation of a portion of the income by Missouri.

The administrative hearing commission affirmed the director's determination. This Court has jurisdiction of the appeal. *Mo. Const. art. V, section 3.*

The decision of the administrative hearing commission is affirmed.

**Facts**

Medicine Shoppe's primary business is franchising retail pharmacies. All but a couple of its employees are located in Missouri. Four or five of its employees in St. Louis deal with credit matters, which includes handling loans to franchisees. The chief financial officer, located in Missouri, has authority to enter into the loan agreements.

The financing provided by Medicine Shoppe is "for the sole purpose of maintaining and enhancing the quality of existing franchises or developing and expanding new franchise business," according to the company. Money loaned to franchisees was to be used only for items related to the operation of the franchise. Other services Medicine Shoppe offered to franchisees include finding locations for the

franchises and offering guidance concerning operations and advertising.

In addition to the loan origination fees and interest, which are the subject of this appeal, Medicine Shoppe's income includes fees paid by franchisees at the commencement of the franchise, fees based on a percentage of the franchisees' sales, and sales of tangible property to franchisees. The income at issue in this case is about seven percent of Medicine Shoppe's total income.

Medicine Shoppe timely filed returns and amended returns using the single-factor apportionment method set forth in section 143.451. Section 143.451.2 requires a corporation to include in its income tax return "all income from sources within this state, including that from the transaction of business in this state and that from the transaction of business partly done in this state and partly done in this state or another state." Where the business is transacted partly within and partly outside the state, the statute prescribes an apportionment method. To apportion the income, there is a fraction: the numerator is the total of business done wholly in the state plus one-half the amount of business transacted partly within and partly outside the state; the denominator is the total amount of business transacted. The corporation's net income is then multiplied by this frac-

tion to determine the amount of Missouri taxable income. *Brown Group, Inc. v. Administrative Hearing Com'n,* 649 S.W.2d 874, 880 (Mo.1983).

Medicine Shoppe used this single-factor apportionment method on its 1990, 1991 and 1992 income tax returns. Loan origination fees and interest income were included in the income apportioned to Missouri. On its 1993, 10–95 and 11–95 returns, Medicine Shoppe used the single-factor apportionment method but designated such income from franchisees outside of Missouri as non-Missouri source income excluded from the statutory apportionment. Medicine Shoppe in 1995 also filed timely amended returns for 1990, 1991 and 1992 excluding from Missouri source income the interest and loan origination fees from franchisees outside of Missouri.

**Business Partly Done in the State**

Section 143.451.1 provides that "Missouri taxable income ... includes all income derived from sources within this state." Section 143.451.2 defines Missouri taxable income as "income from sources within this state" and income from "transaction of business partly done in this state and partly done in another state or states." [1]

1. Section 143.451:
    1. Missouri taxable income of a corporation shall include all income derived from sources within this state.
    2. A corporation ... shall include in its Missouri taxable income all income from sources within this state, including that from the transaction of business in this state and that from the transaction of business partly done in this state and partly done in another state or states. However:
    (1) Where income results from a transaction partially in this state and partially in another state or states, and income and deductions of the portion in the state cannot be segregated, then such portions of

income and deductions shall be allocated in this state and the other state or states as will distribute to this state a portion based upon the portion of the transaction in this state and the portion in such other state or states.
    (2) The taxpayer may elect to compute the portion of income from all sources in this state in the following manner: ...
    (b) The amount of sales which are transactions wholly in this state shall be added to one-half of the amount of sales which are transactions partly within this state and partly without this state, and the amount thus obtained shall be divided by the total sales or in cases where sales do not express

Quite literally, the income in this case results from business "partly done in this state." But there is a limit, imposed by the due process and commerce clauses of the United States Constitution, to how broadly the statute can be read. *See Luhr Bros. Inc. v. Director of Revenue*, 780 S.W.2d 55, 57 (Mo. banc 1989). The constitution prohibits a state from imposing an income-based tax on income earned outside its borders. *Id.* The state may, of course, tax the income from interstate operations, which include operations within the taxing state, if the state provides a fair apportionment formula. *Id.See also Maxland Development Corp. v. Director of Revenue*, 960 S.W.2d 503, 505 (Mo. banc 1998). The basic requirement is that there be some activity in the taxing state that justifies imposing the tax.

"Transaction," as used in the statute, narrows the application of section 143.451.2 because "transaction" signifies business activity that produces income. *Hayes Drilling Inc. v. Director of Revenue*, 704 S.W.2d 232, 234 (Mo. banc 1986), quoting *In re Kansas City Star*, 142 S.W.2d 1029, 1034 (Mo. banc 1940). To be a "transaction," there must be activity or effort in the taxing state that contributes to the production of the income. *J.C. Nichols Co. v. Director of Revenue*, 796 S.W.2d 16, 16–18 (Mo. banc 1990).

This Court has determined the requisite activity or effort in various ways depending on the circumstances of the case. For instance, control of management in Missouri can be "an efficient cause" that contributes directly to the production of income. *See Maxland Development Corp.*, 960 S.W.2d at 506. *Maxland* is particularly instructive. This Court found that two of the three out-of-state properties in *Maxland* were controlled by Missouri corporations to an extent sufficient to contribute to the income. The third property at issue in *Maxland* was held to be an entirely passive investment—and not subject to Missouri taxation—because there was no Missouri effort that was an efficient cause contributing to the income.[2] *See also Wohl Shoe Co. v. Director of Revenue*, 771 S.W.2d 339, 343 (Mo. banc 1989).

To determine that there has been requisite activity or effort in Missouri, this Court also has determined that, where the "brains" of the operation are located in Missouri, the income can be determined to be derived from activities partly within the state for the purposes of section 143.451.2. *Bank Building and Equipment Corp. of America v. Director of Revenue*, 687 S.W.2d 168, 171 (Mo. banc 1985).

In this case, there were numerous activities related to the financing of franchises, through the loans provided by Medicine Shoppe, that were conducted from the company's St. Louis headquarters. Activities at St. Louis headquarters included marketing, operations, accounting, finance,

the volume of business, the amount of business transacted wholly in this state shall be added to one-half of the amount of business transacted partly in this state and partly outside this state and the amount thus obtained shall be divided by the total amount of business transacted, and the net income shall be multiplied by the fraction thus obtained, to determine the proportion of income to be used to arrive at the amount of Missouri taxable income. The investment or reinvestment of its own funds, or sale of any such investment or reinvestment, shall not be considered as sales or other business transacted for the determination of said fraction....

2. The nontaxable property was in another state and was under a triple-net lease in which the lessor provided no services to the tenant and the lessee had to pay for all expenses, maintenance, structural and nonstructural and was obligated to insure the property, pay taxes and utilities. *Maxland*, 960 S.W.2d at 506, 507.

advertising, third-party contracting, and servicing of franchises. As noted, four or five Medicine Shoppe employees dealt with credit matters, handling loans to franchisees.

Medicine Shoppe cites *Petition of Union Electric,* 349 Mo. 73, 161 S.W.2d 968 (1942), and *Union Electric Co. v. Coale,* 347 Mo. 175, 146 S.W.2d 631 (1940), for the proposition that each activity or transaction that produces income should be put in one of three categories: capital, labor, or profits from sale or exchange of assets to determine the actual "source" of that income. However, categorizing or subdividing a corporation's revenues was rejected in *Bank Building,* 687 S.W.2d at 171.

The *Union Electric* cases retain vitality to the extent that they recognize that wholly passive investments outside the state of Missouri are not included in the taxation formula used to determine Missouri taxable income. Here the loans were part of the business of Medicine Shoppe— developing and enhancing its franchises. These loans might be characterized as investments, but they were an important part of the business transacted by Medicine Shoppe in Missouri. They were not passive.

**Conclusion**

The activities in Missouri were sufficient to support the conclusion that the income from loans to franchisees were "the transaction of business partly within this state." Medicine Shoppe maintains significant control over the franchisees to which it provides loans. The brains of Medicine Shoppe's operation are located in St. Louis. The loans are not passive investments, but are part of the over-all business of developing franchises. Therefore, the income so derived must be included in the calculation of Medicine Shoppe's Missouri tax liability.

The decision of the administrative hearing commission is affirmed.

LIMBAUGH, C.J., WHITE, BENTON, LAURA DENVIR STITH and PRICE, JJ., concur.

RICHARD B. TEITELMAN, J., not participating.